**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| TERON FRANKLIN,<br><br>                   Plaintiff,<br><br>v.<br><br>STATE OF NEVADA, *et al.*,<br><br>                  Defendants. | Case No. 3:18-CV-0522-CLB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT MOTION FOR RECONSIDERATION[1]**<br><br>[ECF Nos. 75, 117] |

This case involves a civil rights action filed by Plaintiff Teron Franklin ("Franklin") against Defendants Gregory Martin ("Martin") and Julio Mesa ("Mesa") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 75, 76, 78.)[2] Franklin opposed the motion, (ECF No.

---

[1]     The parties have voluntarily consented to have this case referred to the undersigned to conduct all proceedings and entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 101.)

[2]     ECF No. 76 is an appendix of exhibits filed in support of Defendants' motion for summary judgment. ECF No. 78 consists of Franklin's medical records filed under seal.

    Under the Local Rules, all electronically filed documents that are filed with exhibits or attachments must comply with the following requirements: (1) "[e]xhibits and attachments must not be filed as part of the base document in the electronic filing system. They must be attached as separate files; and" (2) "[e]xhibits and attachments that must be separated due to size must be individually identified when they are filed in the court's electronic filing system. (Example: "Affidavit of Joe Smith," pages 1–30; Affidavit of Joe Smith," pages 31–45, etc.")." LR IC 2-2(3)(A)-(B) (emphasis added). The Court may strike documents that do not comply with these rules. *See* LR IC 7-1.

    Here, the motion for summary judgment consists of a main document with 24 pages and a separately filed appendix of exhibits with 119 pages. (ECF Nos. 75, 76.) Because the appendix does not individually identify each exhibit and file them accordingly, the appendix has been filed improperly. While the Court has a basis to strike this filing, under the circumstances and given the Court's ultimate finding that summary judgment is not warranted, the document will not be stricken in this instance. However, the Court cautions the Office of the Attorney General that further violations of this rule will result in filings being summarily stricken and other appropriate sanctions.

107), and Defendants replied. (ECF No. 119.) Also pending before the Court is Franklin's motion to reconsider, (ECF No. 117), to which Defendants responded, (ECF No. 118). For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 75), is granted in part and denied in part, and Franklin's motion to reconsider, (ECF No. 117), is denied as moot.

I.   FACTUAL BACKGROUND

Franklin is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Franklin was housed at Southern Desert Correctional Center ("SDCC") and Ely State Prison ("ESP"). The basis of Franklin's lawsuit stems from an alleged excessive force incident and lack of medical care following the incident.

A.   Use of Force Incident

On January 21, 2017, Franklin was housed at SDCC Unit Five Wing A. (ECF No. 76 at 7.) On the same date, Defendant Mesa was serving as a correctional officer in Unit Five Wing A. (*Id.* at 10.) A use of force incident occurred between Defendant Mesa and Franklin on this date. (*Id.*) Mesa used force to remove Franklin from his cell, to place Franklin against a wall in order to place restraints on Franklin. (ECF No. 18 at 17-18.)

In his verified complaint[3], Franklin states the following, which is disputed by Defendants: On January 21, 2017, Mesa crept down the hallway with the lights out and "snatched" Franklin's cell door open with a large can of mace. (ECF No. 18 at 16.) Mesa "manhandled" Franklin and handcuffed Franklin in the dark hallway. (*Id.*) Mesa grabbed Franklin around his neck, flipped Franklin on his face and neck, and busted Franklin's right eye and head. (*Id.* at 17-18.) Franklin was partially paralyzed on the right side of his body and leg and there was blood all over the hallway where the assault took place. (*Id.*

---

[3]   "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987) (per curiam)) *amended by* 135 F.3d 1318 (9th Cir. 1998) (order).

2

at 18.) That same day, prison officials took Franklin to Valley Hospital where medical professionals gave Franklin stitches around his eye and diagnosed Franklin with a concussion. (*Id.*)

According to the incident report and a declaration filed by Defendant Mesa, the following occurred: On January 21, 2017, Mesa was on duty in Unit Five walking through Wing A when he saw Franklin wearing unauthorized orange pants. (ECF No. 76 at 12-13.) Mesa went to Franklin's cell to address the wearing of unauthorized clothing. (*Id.*) Mesa unlocked the cell and requested the occupants exit. (*Id.*) Franklin's cellmate was immediately compliant with the order, but Franklin became agitated. (*Id.*) Mesa ordered Franklin to exit his cell again, but Franklin raised his voice and demanded that he be allowed to get dressed, despite already having a t-shirt and pants on. (*Id.*) Mesa permitted Franklin to put on his shoes and begin putting on a long sleeve thermal top, during which time Franklin remained agitated. (*Id.*)

Franklin dropped to one knee after putting on his thermal top and began reaching under the bottom bunk, but Mesa could not see what Franklin was reaching for. (*Id.*) Mesa immediately moved in to remove Franklin from the cell by restraining his arms. (*Id.*) Mesa reasonably feared that Franklin was attempting to grab something that may have been a weapon. (*Id.* at 116-117.) Once Mesa cleared the doorway, he moved Franklin against the wall to place him in restraints. (*Id.* at 12-13.)

Franklin began resisting and attempting to free himself. (*Id.*) In an attempt to gain compliance Mesa used verbal commands ordering Franklin to stop resisting, but Franklin continued resisting. (*Id.*) By this time, an additional correctional officer arrived and assisted in trying to restore order by placing Franklin's cellmate in restraints. (*Id.* at 15.) This correctional officer witnessed Franklin resisting and being uncooperative with Mesa's attempt to retain order. (*Id.*) Mesa became fearful that he was losing control of Franklin's body because of the resistance, so Mesa placed Franklin on the floor to complete his placement of the restraints. (*Id.* at 12-13.)

///

Mesa continued using verbal commands to gain control of Franklin and place restraints while on the ground. (*Id.*) Mesa ordered Franklin to place his right hand behind his back, but Franklin placed his right palm on the ground and began pressing himself up with his arm and his knees. (*Id.*) Fearing Franklin may free himself, Mesa pressed down on Franklin's neck to gain control. (*Id.*) Franklin's head hit the ground and caused a laceration over his right eye. (*Id.*) At this time another correctional officer, Harris, arrived and attempted to assist Mesa in gaining control of Franklin. (*Id.* at 14.) Harris used verbal commands ordering Franklin to stop resisting, but Franklin did not comply. (*Id.*) Finally, Mesa was able to gain control of Franklin's right arm, but Franklin continued to grab at the restraints in an attempt to free himself. (*Id.* at 13.) Eventually, Mesa successfully restrained Franklin and Franklin was transported to medical by other officers who arrived on the scene. (*Id.*) Mesa feared injury to himself, fellow correctional officers, and/or other inmates if Franklin freed himself from his attempts to restrain. (*Id.* at 116-117.)

An independent panel reviewed this use of force incident for any violation of regulations, procedures, or the law. Their review concluded: (1) the use of force was "warranted and not excessive;" (2) Mesa used only "the amount of force necessary to gain compliance;" and (3) the incident was not preventable because Franklin's behavior was unpredictable. (*Id.* at 22-23.)

**B.     Medical Treatment**

The use of force resulted in a laceration over Franklin's eye. (ECF No. 18 at 18; ECF No. 76 at 10, 27.) Once Franklin was transferred to medical for an assessment, CNII Jason Carmichael noted Franklin was walking without assistance; was alert, oriented to person, place, time, and situation; and had a half-inch superficial laceration on the upper outer right eye that was clotted and drying. (ECF No. 76 at 18.)

Following this medical assessment, Franklin was transported to Valley Hospital, where Emergency Room staff diagnosed Franklin with a contusion of the head. (ECF No. 78-1 at 3 (sealed).) In addition to placing sutures in the laceration above Franklin's eye, two CT scans were performed, and staff provided Franklin education materials regarding

4

lacerations on the face and head injury, no wake-up. (*Id.* at 4-8.) These materials stated, "You have a head injury. It does not appear serious at this time. Symptoms of a more serious problem (concussion, bruising, or bleeding in the brain) may appear later. Therefore, watch for the WARNING SIGNS listed below." (*Id.* at 7.) Valley Hospital recommended following-up with "the primary care doctor at the jail in 7 days for suture removal." (*Id.* at 4.)

Medical staff removed Franklin's sutures on January 28, 2017 and noted that his wound was "dry [with] scabs noted wound cleaned & covered w/ dry dressing . . . no signs of infection." (ECF No. 78-2 at 3 (sealed).)

On February 22, 2017, Franklin was transferred to and housed at ESP. (ECF No. 76 at 7.) On the same day, medical staff noted he was received at ESP with his keep on person ("KOP") medications. (ECF No. 78-2 at 3 (sealed).) Franklin wrote numerous medical kites following the January 21, 2017 use of force incident. (ECF No. 78-3 (sealed).)

In his verified complaint, Franklin asserts after he was taken to Valley Hospital, he was given stitches around his eye and was diagnosed with a concussion. (ECF No. 18 at 18.) Franklin further asserts that upon transfer to ESP following the use of force incident, medical staff refused to acknowledge Franklin's injuries. (*Id.* at 19.) After Franklin wrote to ESP medical several times, the medical staff told Franklin three times that they would schedule a neurologist appointment for him but never did. (*Id.*) When Franklin saw Dr. Martin at ESP, Dr. Martin pointed his finger at Franklin and said, "pow" as if he had just shot Franklin in the head. (*Id.* at 20.) Dr. Martin and the ESP medical staff refused to acknowledge the orders from Valley Hospital. (*Id.*) As a result, Franklin asserts he had to remove his own stitches from his eye area. (*Id.*)

On January 31, 2017, Franklin filed Grievance 2006-30-41910, as an appeal from the disciplinary action taken as a result of the January 21, 2017 incident. (ECF No. 76 at 59-76.) The second level appeal was denied and received by Franklin on October 24, 2017. (*Id.* at 60.)

5

## II.  PROCEDURAL HISTORY

On October 23, 2018, Franklin filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging several violations of his First, Fifth, and Eighth Amendment rights. (ECF No. 1-1.) On August 6, 2019, the District Court entered a screening order dismissing the entire complaint with prejudice, finding Franklin's factual allegations were "fanciful, *i.e.*, fantastic or delusional scenarios." (ECF No. 6.) Franklin filed a motion for reconsideration, (ECF No. 9), which the District Court denied. (ECF No. 10.) On October 24, 2019, Franklin filed a Notice of Appeal to the United States Court of Appeals, Ninth Circuit. (ECF No. 11.) On March 13, 2020, the Ninth Circuit issued an order affirming in part, reversing in part, and remanding Franklin's case. (ECF No. 13.) Specifically, the Ninth Circuit affirmed the dismissal of the complaint as frivolous, with the exception of allegations raised in paragraphs 104 to 106 concerning an incident of assault by a correctional officer. (*Id.*) Thus, the case was remanded to allow Franklin leave to file an amended complaint concerning the allegations in 104 to 106 only. (*Id.*)

On April 13, 2020, the District Court directed the Clerk to vacate the original screening order, (ECF No. 6), and Judgment, (ECF No. 8), and reopen the case to allow Franklin to file an amended complaint on the allegations in paragraphs 104 to 106 in Franklin's original complaint only. (ECF No. 17.)

Thus, on April 28, 2020, Franklin filed his amended complaint pursuant to 42 U.S.C. § 1983 alleging Defendants used excessive force against him while he was incarcerated at SDCC and were deliberately indifferent to his serious medical needs after the alleged excessive force incident upon transfer to ESP. (ECF No. 18.) On July 9, 2020, the District Court screened the complaint pursuant to 28 U.S.C. § 1915A, and permitted Franklin to proceed on an excessive use of force claim under the Eighth Amendment against Defendant Mesa, and a deliberate indifference to serious medical needs claim against Defendants Martin and Doe ESP medical staff. (ECF No. 19.) The Court dismissed without prejudice a First Amendment retaliation claim, as well as dismissed without prejudice Defendants Tristan and Aranas. (*Id.*)

On March 9, 2022, Defendants filed their motion for summary judgment arguing this case should be dismissed because: (1) Franklin failed to file his complaint before the statute of limitations; (2) Franklin failed to exhaust his administrative remedies regarding allegations of deliberate indifference to a serious medical need; (3) Defendant Martin did not personally participate in the alleged violations; (4) Defendant Mesa used force in a good faith attempt to maintain control of Franklin; (5) Defendant Martin was not deliberately indifferent to a serious medical need; and (6) Defendants are entitled to qualified immunity. (ECF No. 75.) Franklin opposed the motion, (ECF No. 107), and Defendants replied. (ECF No. 119.)

## III.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is

"not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

IV.   **DISCUSSION**

    A.   **Statute of Limitations**

Defendants first argue for summary judgment on the basis that Franklin's claims are barred by the two-year statute of limitations applicable to claims brought under 42 U.S.C. § 1983. (ECF No. 75 at 10-12.)

Since 42 U.S.C. § 1983 contains no statute of limitations, federal courts apply the forum state's statute of limitations for personal injury claims to determine whether a complaint is timely filed. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000). Therefore, in Nevada, the statute of limitations for section 1983 actions is two years. *See* Nev. Rev. Stat. § 11.190(4)(e); *see Rosales-Martinez v. Palmer*, 753 F.3d 890, 895 (9th Cir. 2014). Under the applicable statute of limitations, Franklin had two years from the time of the alleged injury to commence the instance suit. *Id.* An action is deemed to be commenced when the complaint is filed. *Id.* However, the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005); *see also Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) ("This circuit has, with other circuits, adopted a mandatory tolling provision for claims subject to the Prison Litigation Reform Act.").

A § 1983 action is commenced in federal district court for purposes of the statute of limitations when the complaint is filed pursuant to the Federal Rules of Civil Procedure. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). The Ninth Circuit has concluded that a plaintiff has "brought" an action for purposes of § 1915(g) when he "submits a complaint and request to proceed *in forma pauperis* to the court." *O'Neal v. Price*, 531 F.3d 1146, 1152 (9th Cir. 2008).

Defendants argue Franklin knew or had reason to know of his injury on January 21, 2017, the date of the use of force incident. *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Because Franklin filed grievances related to the incident, the statute of limitations was tolled and began running on October 26, 2017, which is the final response date of grievance 2006-30-41910. (ECF No. 75 at 11.) Thus, Franklin had until October 26, 2019 to bring his action.

Confusingly, Defendants argue that the Court should use the date Franklin filed his amended complaint—April 28, 2020—as the date he "brought" this action. (ECF No. 18; ECF No. 75 at 11.) This argument is directly contrary to established case law in this circuit. The Ninth Circuit explicitly held that an action is "<u>brought</u>" for purposes of the PLRA

1   when the complaint is tendered to the district clerk, not when it is subsequently filed
2   pursuant to the grant of a motion to proceed *in forma pauperis*. *Vaden v. Summerhill*, 449
3   F.3d 1047, 1150–51 (9th Cir. 2006). Franklin submitted his original complaint to the Court
4   on October 23, 2018. (ECF No. 1-1). Thus, Franklin brought his action well before the
5   applicable statute of limitations. *See O'Neal*, 531 F.3d at 1152. Because Franklin
6   tendered his original complaint to the Court on October 23, 2018, he filed his complaint
7   well within the applicable statute of limitations period and Defendants are not entitled to
8   summary judgment on this basis.

### B.   Failure to Exhaust Administrative Remedies as to Medical Claim

Next, Defendants argue summary should be granted because Franklin failed to exhaust his administrative remedies as to his deliberate indifference claim against Defendant Martin. (ECF No. 75 at 12-14.)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on

the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

1. **Analysis**

Defendants argue Franklin did not grieve the issues surrounding his medical treatment that arose from the January 21, 2017 use of force incident. (ECF No. 75 at 14.) Defendants attach Franklin's grievance history report and claim this demonstrates that the only issue he fully exhausted is his excessive force claim. (ECF No. 76 at 77-114.) On January 31, 2017, Franklin filed grievance 2006-30-41910, regarding disciplinary charges related to the use of force incident on January 31, 2017. (ECF No. 76 at 59-76.) While this grievance discusses the use of force incident and injuries Franklin sustained, it does not discuss lack of medical care following the incident. (*Id.*) Franklin points to an informal grievance that discusses medical treatment at ECF No. 107 at 106-108. However, there is no record of this informal grievance being received by NDOC staff.

After an exhaustive review of the record, the Court could not locate any other grievances that discuss lack of medical treatment related to the use of force incident.

It is well established that PLRA requires "proper exhaustion" of an inmate's claims. *See Woodford*, 548 U.S. at 90. Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin*, 557 F.3d at 1119 (citing *Woodford*, 548 U.S. at 90). Additionally, "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. Here, it appears Franklin failed to follow all required steps to allow prison officials to reach the merits of the issue as he failed to file a grievance related to his medical treatment. While Franklin notes that he filed several medical kites related to medical treatment, (ECF No. 107 at 23-25), this does not satisfy the grievance procedure laid out by NDOC. *See, e.g., Depasquale v. Nevada Dept. of Corrections*, No. 3:07-cv-00107-LRH-VPC, 2009 WL 2957967 at *4 (D. Nev. Sept. 10, 2009) (finding that plaintiff cannot exhaust his administrative remedies through means outside of the grievance process such as through medical kites and letters to doctors.) Additionally, aside from his self-serving statements that he filed grievances, there is no evidence that Franklin actually filed any grievance explicitly related to lack of medical treatment that he received by NDOC employees. Accordingly, the Court finds that Franklin failed to exhaust his administrative remedies pursuant to NDOC Administrative Regulation 740 prior to initiating this action as to Franklin's deliberate indifference claim.

The burden now shifts to Franklin "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). Franklin provides no evidence to show that administrative remedies were unavailable to him. Franklin only asserts that many of his grievances were "being tossed" but does not provide any evidence of his assertion. (ECF No. 107 at 38.) Franklin's self-serving statement provides an insufficient basis from which a reasonable jury can find in his favor, in light of the

documentary evidence Defendants have presented. Because Franklin presents no evidence that administrative remedies were effectively "unavailable," the Court concludes that Franklin failed to exhaust available administrative remedies prior to filing this action as to his Eighth Amendment deliberate indifference to serious medical needs claim, and therefore the Court grants Defendants' motion as to this claim only.[4]

### C. Excessive Force

The Court will now address the substantive arguments related to Franklin's remaining claim involving the use of excessive force. The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations,

---

[4] Because the Court finds that Franklin failed to exhaust his administrative remedies as to his deliberate indifference to serious medical needs claim, it need not discuss the other arguments presented by Defendants related to this claim.

prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Defendants contend the force was reasonable and used in a good faith effort to restore discipline. (ECF No. 75 at 5-9.) Based on the evidence before the Court, and in viewing all facts and drawing all inferences in the light most favorable to Franklin, the Court finds that summary judgment must be denied with respect to the excessive force claim for several reasons.

First, Defendants fail to meet their initial burden in moving for summary judgment to demonstrate that a reasonable juror could not find for Franklin. *Celotex*, 477 U.S. at 323. Defendants are thus unable to overcome the initial step in the summary judgment burden-shifting framework. *See In re Oracle Corp.*, 627 F.3d at 387.

Franklin's verified complaint alone overcomes Defendants' claim that "no evidence exists" to establish excessive force in this case. Pursuant to Ninth Circuit law, "[a] verified complaint may be treated as an affidavit to the extent that the complaint is based on

personal knowledge and sets forth facts admissible in evidence . . . ." thus satisfying the *Celotex* affidavit requirement. *McElyea,* 833 F.2d at 197-98 (quoting *Lew v. Kona Hospital*, 754 F.2d 1420, 1423 (9th Cir. 1985).

To the extent Defendants argues the Court should discount the facts stated in the complaint, this argument also fails. The Court may not engage in '[c]redibility determinations' or 'the weighing of evidence'" at the summary judgment stage, "as those are functions reserved for the jury." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson*, 477 U.S. at 255).

Therefore, Defendants have failed to meet their initial burden on summary judgment establishing that there was no evidence in the record that the events occurred based on the complaint. On this basis alone, Defendants' motion should be denied as to the excessive force claim.

However, even if the Court were to assume Defendants met their initial burden on summary judgment, Defendants' motion must still be denied. Viewing the evidence in the light most favorable to Franklin, the Court cannot say as a matter of law that the force used was not excessive as it appears the evidence is disputed. According to Franklin's allegations, Mesa maliciously and sadistically pulled Franklin out of his cell for the purpose of causing injury to him. Based on these allegations, Mesa's use of force did not appear to be used to maintain or restore discipline. (ECF No. 18.) By contrast, Defendants allege that the use of force was reasonable and necessary based on the circumstances surrounding the incident. A jury will have to shift through the facts presented to determine whether the amount of force used against Franklin was excessive or whether it was reasonable and necessary in light of the facts and circumstances.

It is not the Court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Further, the Ninth Circuit has found that the reasonableness of force used is ordinarily a question of fact for the jury because such cases almost always turn on a jury's credibility

determinations. *See Liston,* 120 F.3d at 976 n. 10.

The Court finds that Franklin has set forth evidence sufficient to raise a genuine issue of material fact for trial as to whether Defendants' use of force was "maliciously and sadistically" applied rather than as part of a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Accordingly, the Court recommends that Defendants' motion for summary judgment, (ECF No. 75), be denied as to Franklin's Eighth Amendment excessive force claim.

### D. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown,* 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson*, 483 U.S. at 640). "While there does not have to be a case directly on point, existing precedent

must place the lawfulness of the particular [action] beyond debate," *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (alteration in original) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (internal quotation marks omitted)), and must " 'squarely govern[ ]' the specific facts at issue," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)). *See Jessop v. City of Fresno*, 936 F.3d 937, 940–41 (9th Cir. 2019) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson*, 483 U.S. at 640).

The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). However, because resolving whether the asserted federal right was clearly established presents a pure question of law, we draw on our "full knowledge" of relevant precedent rather than restricting our review to cases identified by the plaintiff. *See Elder*, 510 U.S. at 516 (holding appellate court must review qualified immunity judgment de novo and resolve whether federal right was clearly established in light of its "full knowledge of its own [and other relevant] precedents") (alteration in original) (citation omitted). Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Lane*, 526 U.S. 603, 617 (1999)); *see also Wesby*, 138 S. Ct. at 589–90 ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent.") (internal quotation marks and citations omitted); *Carroll v. Carman*, 574 U.S. 13, 17, (2014) (per curiam) (assuming without deciding that controlling circuit precedent could constitute clearly established federal law).

Defendants contend Mesa is entitled to qualified immunity because the law was not clearly established at the time of the alleged violation. (ECF No. 75 at 20-22.)

Defendants assert that a reasonable officer in Mesa's position would have believed using force to remove an inmate from an unknown object under a prison bed and to regain control of an inmate fighting to free themselves from restraints was lawful. (*Id.* at 22.) However, these arguments assume that Mesa's version of events occurred. Because genuine issues of material fact exist as to whether Mesa violated Franklin's constitutional rights, qualified immunity is not appropriate at this juncture.

Based on Franklin's version of events, it was clearly established at the time of the incident that a prison official violates the constitution when force is used maliciously or sadistically to cause harm and not in a good-faith effort to maintain or restore discipline. *See Hudson,* 503 U.S. at 6-7. Taking the facts in the light most favorable to Franklin, a fact finder could determine that Defendants violated Franklin's clearly established rights. For these reasons, Defendants are not entitled to qualified immunity.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

For the reasons stated above, **IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 75), is **GRANTED in part,** and **DENIED in part**, as follows:

- **GRANTED**, as to the Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Martin, and
- **DENIED**, as to the Eighth Amendment excessive force claim against Defendant Mesa.

**IT IS FURTHER ORDERED** that Defendant Martin is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** accordingly.

///

19

1 | **IT IS FURTHER ORDERED** that Franklin's motion for reconsideration, (ECF No. 117) is **DENIED, AS MOOT**.

DATED: January 9, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**